1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICKY TYRONE FOSTER,                     Case No.  1:21-cv-01044-JLT-HBK (PC)

12              Plaintiff,                     ORDER GRANTING DEFENDANTS'
                                              REQUEST FOR JUDICIAL NOTICE AND
13        v.                                   DENYING PLAINTIFF'S REQUEST FOR
                                              JUDICIAL NOTICE
14   KAWEAH DELTA MEDICAL CENTER,
     KENNY DERKANG LEE,                        (Doc. Nos. 16, 26, 44)
15
                Defendants.                    FINDINGS AND RECOMMENDATIONS TO
16                                             GRANT DEFENDANTS' CROSS-MOTION
                                              FOR SUMMARY JUDGMENT AND DENY
17                                             PLAINTIFF'S MOTION FOR SUMMARY
                                              JUDGMENT
18
19                                            FOURTEEN-DAY OBJECTION PERIOD

20                                             (Doc. Nos.  5, 23)

21

22

23        Pending before the Court are Plaintiff's motion for summary judgment and Defendants'

24   cross-motion for summary judgment.  (Doc. Nos. 5, 23).  For the reasons discussed below, the

25   undersigned recommends the district court grant Defendants' cross-motion for summary

26   judgment because there is no genuine dispute of material facts as to whether Defendant Dr. Lee

27   acted with deliberate indifference to Plaintiff's serious medical condition.  Because the

28   undersigned finds no underlying constitutional violation by Defendant Lee, Plaintiff's claim

arising under *Monell*[1] against Defendant Kaweah Delta Medical Center fails.  Relatedly, the undersigned recommends the district court deny Plaintiff's motion for summary judgment as procedurally deficient, or moot to the extent Defendants' motion is granted.

Also pending are Defendants' Request for Judicial Notice (Doc. Nos. 16, 26 at 29-366), [2]and Plaintiff's Request for Judicial Notice contained within an Ex Parte Motion for Clarification (Doc. No. 44).  For the reasons set forth below, the undersigned grants Defendants' Request for Judicial Notice and denies Plaintiff's Request for Judicial Notice.

# I.   BACKGROUND

## A. Procedural History

Plaintiff Ricky Tyrone Foster is a state prisoner proceeding pro se and *in forma pauperis* in his civil rights action under 42 U.S.C. § 1983 against Defendant Kaweah Medical Center (KMC)[3] and Doctor Kenny Derkang Lee (Dr. Lee).  Plaintiff constructively filed this action in Tulare County Superior Court on October 1, 2019.[4]  (Doc. No. 1 at 3).  On January 29, 2020, the Tulare Superior Court granted Defendants' demurrer to the complaint without leave to amend finding the state law medical negligence claims time barred.  (*Id.* at 140-143).  After appeal, the Fifth District Court of Appeal sustained the trial court's findings regarding the demurrer as to all state law claims but overruled the trial court's findings as to Plaintiff's federal civil rights cause of action under 42 U.S.C. § 1983.  (*Id.* at 369-389).

On July 2, 2021, Defendants removed the action to this Court.  (Doc. No. 1 at 1).  Approximately two weeks following removal, Plaintiff filed a motion for summary judgment.  (Doc. No. 5, Plaintiff's MSJ).  Defendants opposed Plaintiff's MSJ, citing to procedural deficiencies.  (Doc. No. 10).  Defendants also filed evidentiary objections to Plaintiff's

---

[1] *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

[2] Defendants filed a Motion for Judicial and also incorporated a request for judicial notice in its Statement of Evidence in Support of its X-MSJ.  (Doc. Nos. 16 and 26 at 29—31).

[3] Defendants state that Kaweah Delta Health Care District owns and operates KMC, which is now known as Kaweah Health Medical Center.  (Doc. No. 23 at 1).

[4] The Court applies the "prison mailbox rule" to pro se prisoner pleadings and deems a pleading filed on the date the prisoner delivers it to prison authorities for forwarding to the clerk of court.  *See Saffold v. Newland,* 250 F.3d 1262, 1265, 1268 (9th Cir. 2000), *overruled on other grounds, Carey v. Saffold,* 536 U.S. 214 (2002).  Plaintiff signed the complaint on October 1, 2019.  (*See* Doc. No. 1 at 3).  Absent evidence to the contrary, the Court considers this the date of filing.

1   declaration offered in support of his MSJ.  (Doc. No. 11).  Defendants KMC and Dr. Lee filed a

2   cross-motion for summary judgment on October 1, 2021.  (Doc. No. 23, X-MSJ).  Plaintiff filed a

3   declaration and a memorandum in opposition to Defendants' X-MSJ.  (Doc. No. 42).  Thereafter,

4   Plaintiff filed a construed opposition including his disputed and undisputed material facts to

5   Defendants' X-MSJ and Defendants' Reply thereto.[5]  (Doc. Nos. 43, 33 at 1-24, 44).  The Court

6   granted in part Plaintiff's motion for clarification to the extent the Court would consider the

7   exhibits to Plaintiff's ex parte motion as part of Plaintiff's opposition to the Defendants' X-MSJ

8   as permitted by the Federal Rules of Civil Procedure and the Local Rules.[6]  (Doc. Nos. 46).

9        A § 1915 screening order was not issued in this case due to its unique procedural history,

10   including the Fifth District Court of Appeal remanding the action to the State court noting the

11   complaint stated a federal claim, Plaintiff filing his MSJ two weeks after the removal of the case

12   to federal court, and Defendants filing a X-MSJ.  Notably, the Fifth District Court of Appeal, in

13   reversing the Superior Court's rulings, determined the complaint stated a cause of action under

14   the federal Civil Rights Act, 42 U.S.C. § 1983, and the principles set forth in *Monell*, 436 U.S.

15   658 and *City of Canton v. Harris*, 489 U.S. 378 (1989).  (*See* Doc. No. 1 at 370).

16        **B.  Plaintiff's MSJ**

17        Contrary to the Court's Local Rules and Rule 56, Plaintiff's MSJ does not contain a

18   statement of undisputed facts.  Instead, Plaintiff attaches: (1) his own declaration; (2) the Superior

19   Court of Tulare County's order vacating its ruling on Defendants' demurrer following the

20   appellate court's order; and (3) an oral questionnaire propounded by the Fifth District Court of

21   Appeal seeking answers from counsel and Plaintiff prior to its remand of the case back to the

22   Superior Court.  (*See generally* Doc. No. 5).  In their opposition, Defendants identify deficiencies

23   in Plaintiff's MSJ.  (Doc. No. 10).

24        **B.  Defendants' Cross MSJ**

25

26   [5] The Court granted in part and denied in part Plaintiff's motion for clarification to the extent the Clerk did
     not receive and docket Plaintiff's opposition to the Defendants' X-MSJ but noted Defendants' Reply
     contained the record of Plaintiff's disputed and undisputed material facts.  (*See* Doc. No. 43).

27   [6] The order specifically referenced "Exhibit C" attached to Plaintiff's ex parte motion, but for purposes of
     these Findings and Recommendations, the undersigned considers "Exhibit A," "Exhibit B" and "Exhibit

28   C."  (Doc. No. 44 at 16-52).

1    Supporting their X-MSJ, Defendants submit: (1) a statement of undisputed material facts

2    (Doc No. 25); (2) the declaration of Sam Shen, M.D., M.B.A., C.P.P.S. (Doc. No. 26 at 4-10); (3)

3    the declaration of attorney Stacy R. Lucas requesting the Court take judicial notice of records

4    before the state court (Doc. No. 26 at 29-31); and (4) Plaintiff's pertinent medical records.

5    Defendants refer to Sam Shen as an "expert."  (Doc. No. 24 at 2).

6    In opposition, Plaintiff submits: (1) a letter from KMC dated May 5, 2018 (Doc. No. 44 at

7    20-21); (2) an online printout from Wolters Kluwer on rib fractures (*id.* at 23); (3) an unsigned

8    declaration; (4) an "addendum" with argument and a CPOE order session summary report dated

9    August 6, 2017 (*id.* at 26-34); (5) an unsigned request for judicial notice requesting the Court take

10   judicial notice of the aforementioned documents (*id.* at 36-38); (6) a statement of undisputed facts

11   in opposition to Defendants' MSJ (*id.* at 40-48) also contained elsewhere in the record, and (7) a

12   grievance decision dated January 25, 2022 (*id.* at 50-52).

13   **II.  APPLICABLE LAW**

14   **A.  Summary Judgment Standard**

15   The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

16   order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith*

17   *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate

18   when there is "no genuine dispute as to any material fact and the movant is entitled to judgment

19   as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate

20   time for discovery and upon motion, against a party who fails to make a showing sufficient to

21   establish the existence of an element essential to that party's case, and on which that party will

22   bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

23   moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of

24   material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence

25   for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

26   affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477

27   U.S. 242, 248 (1986).

28   If the moving party meets its initial burden, the burden then shifts to the opposing party

to present specific facts that show there to be a genuine issue of a material fact.  *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence."  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly."  *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)).  While prisoners are relieved from strict compliance, they still

must "identify or submit some competent evidence" to support their claims.  *Soto*, 882 F.3d at

872.  Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment

if based on personal knowledge and specific facts admissible in evidence.  *Lopez v. Smith*, 203

F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory allegations

unsupported by specific facts, will not be sufficient to avoid summary judgment.  *Arpin v. Santa*

*Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And, where a plaintiff

fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to

have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

The undersigned has carefully reviewed and considered all arguments, points and

authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

objections, and other papers filed by the parties.  The omission to an argument, document, paper,

or objection is not to be construed that the undersigned did not consider the argument, document,

paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

deemed admissible, material, and appropriate for purposes of issuing these Findings and

Recommendations.

### B.  Eighth Amendment Medical Deliberate Indifference

The Constitution indisputably requires prison officials to provide inmates with reasonably

adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To hold an official liable for

violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective

prong and subjective prong.  First, the inmate must suffer from a serious medical need (the

objective prong); and second the official must be deliberately indifferent to the inmate's serious

medical need (the subjective prong).  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012),

*overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014);

*Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).  A medical need is "serious" if the

failure to treat "could result in further significant injury or the unnecessary and wanton infliction

of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).  The

"second prong—defendant's response to the need was deliberately indifferent—is satisfied by

showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need

and (b) harm caused by the indifference." *Id.* (internal citations omitted).  This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or between a physician and the prisoner— generally does not amount to deliberate indifference.  *See generally Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.").  To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332.

Neither will an "inadvertent failure to provide medical care" sustain a claim.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Misdiagnosis alone is not a basis for a claim, *see Wilhelm*, 680 F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

### III.  ANALYSIS

#### A.  Allegations in Plaintiff's Complaint

The following allegations are set forth in the Complaint.  Plaintiff Foster is serving a life-term in the CDCR.  (Doc. No. 1 at 8).  The injuries Plaintiff's sustained that give rise to his

deliberate indifference claim occurred at Corcoran State Prison ("CSP") during a race riot on August 6, 2017.  (*Id.* at 9).  Plaintiff claims he did not sustain "many injuries" from the initial riot but instead sustained his injuries from an altercation afterwards while he was restrained on a gurney.  (*Id.*).  More specifically, an unidentified correctional official allowed an inmate to attack Plaintiff while he was on the gurney, causing the gurney to fall over and Plaintiff to fall on top of a black metal box.  (*Id.* at 9-10).  As more fully discussed *infra*, noticeably absent from the Complaint are any allegations that Plaintiff sustained any stab wounds during the riot or altercation afterward.

Shortly after the riot, correctional officials transported Plaintiff to Defendant KMC where he underwent x-rays and CT scans.  (*Id.* at 10).  "Defendants" told Plaintiff his x-rays and CT scan revealed no fractures.  (*Id.*).  Plaintiff "demand[ed] a second medical opinion" because his chest was "very noticeable [sic] swollen," and he was "suffering from the inability to breath and crying from the pain."  (*Id.*).  Instead of providing Plaintiff with a second medical opinion, Defendants offered him "addictive narcotics."  (*Id.*).

After three days, Plaintiff was discharged from KMC and transferred back to prison.  (*Id.* at 10).  Two days later, x-rays taken at the prison revealed a "minimally displaced right 10th rib fracture." (*Id.*).  Additional x-rays and CT scans taken at various points in time afterwards revealed "healing" and fractured ribs "of the anterior arch of the right fourth through seventh ribs and fractures of the anterior arcs of the left fourth through six ribs."  (*Id.* at 10).

Plaintiff attributes liability to Dr. Lee and KMC because they "refused to treat" his broken ribs, resulting in the unnecessary and wanton infliction of pain.  (*Id.* at 12).  Plaintiff faults KMC for not training Dr. Lee.  (*Id.*).  As relief, Plaintiff seeks monetary damages and declaratory relief.  (*Id.* at 8, 14).

### B. Requests for Judicial Notice

A court may, on its own, judicially notice adjudicative facts that are not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction or can be accurately and readily determined form sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b)(1)-(2).  A court must take judicial notice if a party requests it,

1    and the court is supplied with the necessary information. Fed. R. Evid. 201(c)(2).

2          **1.  Defendants' Request for Judicial Notice**

3          Defendants request the Court to take judicial notice of the following pleadings and the

4    state court orders filed in Tulare County Superior Court pursuant to Federal Rules of Evidence

5    201:

6          • Plaintiff's complaint filed in Tulare Superior Court at case no. VCU280726

7             identified as "Exhibit A" to Declaration of Stacy Lucas.  (Doc. No. 26 at 32-44).

8          • Defendants' Notice of Demurrer and Demurrer to Plaintiff's Complaint filed in

9             Tulare Superior Court at case no. VCU280726 identified as "Exhibit B" to

10            Declaration of Stacy Lucas.  (Doc. No. 26 at 45-49).

11         • Tulare Superior Court's Order on Defendants' Demurrer dated January 29, 2020

12            filed at case no. VCU280726 identified as "Exhibit C" to Declaration of Stacy

13            Lucas.  (Doc. No. 26 at 50-55).

14         • Opinion by the Fifth District Court of Appeal dated March 30, 2021 identified as

15            "Exhibit D" to Declaration of Stacy Lucas.  (Doc. No. 26 at 56-77).

16         •  Tulare Superior Court's Order dated July 3m 2021 filed at case no. VCU280726

17            vacating its January 29, 2020 Order identified as "Exhibit E" to Declaration of

18            Stacy Lucas.  (Doc. No. 26 at 78-80).

19         • Defendants' Answer filed in Tulare Superior Court at case no. VCU280726

20            identified as "Exhibit F" to Declaration of Stacy Lucas. (Doc. No. 26 at 81-90).

21         • Defendants' Notice of Removal filed in this action identified as "Exhibit G" to

22            Declaration of Stacy Lucas.  (Doc. No. 26 at 91-96; *see also* Doc. No. 1).

23         • Plaintiff's MSJ filed in this action identified as "Exhibit H" to Declaration of

24            Stacy Lucas.  (Doc. No. 26 at 97-366; *see also* Doc. No. 5).

25         (Doc. No. 16 at 2).  The court may properly take judicial notice of pleadings and/or orders

26   from other court proceedings "if those proceedings have a direct relation to the matters at issue."

27   *United States ex. rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248

28   (9th Cir. 1992) (citations and internal quotation marks omitted); *Trigueros v. Adams*, 658 F.3d

983, 987 (9th Cir. 2011).  However, a court may not take judicial notice of findings of facts from another case.  *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006).   Defendant appended these state court pleadings and the referenced court orders to its notice of removal, and they are a part of the public record in this case.  The Court grants Defendants' request to take judicial notice of the above-referenced pleadings and court orders because these court proceeding documents "have a direct relation to the [matter] at issue." *Borneo, Inc.*, 971 F.2d at 248.  Further, the Court takes judicial notice of the "judicial act" the order represents but the Court does not take judicial notice of the truth of any pleading or declaration filed in the Tulare state court action. *U.S. Bank, N.A. v. Miller*, 2013 WL 12114100, at *4 (C.D. Cal. Sept. 30, 2013).

### 2. Plaintiff's Request for Judicial Notice

In his Motion for Clarification filed on June 27, 2022, Plaintiff includes a request for judicial notice of the following documents:

- Correspondence dated May 25, 2018 from Miriam Bermudez, Kaweah Delta Health District's Office of Patient Experience to Plaintiff's responding to Plaintiff's March 29, 2018 correspondence about his care during his treatment at Defendant's facility identified as "Exhibit A."  (Doc. No. 44 at 20-21).

- A one-page reprint from the website "UpToDate" titled "Patient education: Rib fractures in adults (The Basics)," "Written by the doctors and editors at UpToDate" identified as "Exhibit C."  (Doc. No. 44 at 22).

- Purported medical opinions regarding x-rays of Plaintiff's ribs dated August 29, 2017, September 12, 2017, October 9, 2017, December 4, 2019 identified as "Exhibit C." (Doc. No. 44 at 37).

(Doc. No. 44 at 16-17).  Plaintiff does not include any legal authority or justification supporting his request for judicial notice of the various exhibits.  Defendants dispute the admissibility of the correspondence identified as Exhibit A because it is "unauthenticated, inadmissible hearsay." (Doc. No. 33 at 18).  Because the correspondence is not a matter of public record, and the facts stated therein describe the results of medical tests and examinations, the accuracy of which is not readily verifiable, it does not fall within the category of documents that can be judicially noticed.

10

1    *Walker v. Woodford*, 454 F. Supp 2d 1007, 1024 (S.D. Cal. 2016), aff'd in part, 393 F. App'x 513

2    (9th Cir. 2010) (finding various correspondence and information from internet website not subject

3    to judicial notice).  Thus, the Court declines to take judicial notice of the correspondence

4    identified as Exhibit A.

5         Defendants also object to the printout of the document from the internet identified as

6    Exhibit B on the basis that it is "unauthenticated, inadmissible hearsay."  (Doc. No. 33 at 19).

7    Judicial notice of information available online is appropriate if "it was made publicly available by

8    [a] government entit[y] . . . and neither party disputes the authenticity of the web sites or the

9    accuracy of the information displayed therein."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,

10   998–99 (9th Cir. 2010).  Information on "third party websites is not a proper subject for judicial

11   notice because it is not capable of accurate and ready determination.  *Gerritsen v. Warner Bros.*

12   *Ent. Inc.,* 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015); *Walker v. Woodford*, 454 F. Supp 2d at

13   1024.  Thus, the Court declines to take judicial notice of the facts reprinted from the website

14   "UpToDate" titled "Patient education: Rib fractures in adults (The Basics)" identified as Exhibit

15   B.

16        With regards to "Exhibit C," the purported medical opinions for x-rays and medical

17   documents are not attached.  Instead, "Exhibit C" contains a copy of Plaintiff's January 14, 2022

18   grievance alleging staff misconduct and CDCR's January 25, 2022 response regarding the same.

19   (Doc. No. 44 at 49-52).  Further, courts usually deny requests to take judicial notice of prisoner

20   medical records because they are not matters of public record.  *See Grant v. Samuels*, 2022 WL

21   3013223 *1-*2 (C.D. Cal. June 15, 2022) (finding facts contained in prison medical records are

22   not readily verifiable and generally known to the public) (citations omitted).  Nonetheless,

23   Defendants attach Plaintiff's pertinent medical records with a declaration from the custodian of

24   records attesting to the medical records' authenticity, including the August 6, 2017, medical

25   record.  (Doc. No. 26 at 118-119).  Thus, the Court declines to take judicial notice of the

26   purported medical records because no such medical records are attached and otherwise are not

27   subject to judicial notice absent the documents being authenticated.

28        **C.  Defendant's Proposed Expert Testimony**

11

1  Defendants refer to Dr. Shen's opinion testimony as "expert" testimony and seek to

2  qualify him as an expert based on his education, background, training, knowledge, and substantial

3  experience, coupled with his review of Plaintiff's medical records. [7]  (Doc. No. 33 at 4, ¶ 8).  Fed.

4  R. Evid. 702 requires that expert testimony be both "reliable and relevant" whether based on

5  scientific, technical, or other specialized knowledge."  *Kumho Tire Co., Ltd. v. Carmichael*, 526

6  U.S. 137, 149 (1999).

7  Dr. Shen, M.D., received his medical license from the Medical Board of California in

8  2005 and has been board certified as an Emergency Department physician since 2006.  (Doc. No.

9  26 at 1).  He has experience working in the emergency room at Stanford Health Center and has

10  been a Clinical Associate Professor in the Department of Emergency Medicine at Stanford

11  University School of Medicine in Stanford, California since 2014.  (*Id.* at 5, ¶ 3).  He has been

12  Associate Chief Quality Officer and Patient Safety Officer at Stanford Health Care since 2019.

13  (*Id.*).  Dr. Shen previously provided emergency medical services at general acute care hospitals

14  emergency departments.  (*Id.*, ¶ 5).  In formulating his opinions, Dr. Shen relied upon his

15  education, training, knowledge, and professional experience as a board-certified emergency

16  physician, and conducted a thorough review and analysis of Plaintiff's medical records from his

17  August 6 -9, 2017 hospital stay at KMC, the radiology studies taken during Plaintiff's August 6-

18  9, 2017 hospital stay, and a copy of Plaintiff's Complaint.  (*Id.* at 6, ¶ 7).

19  The Court accepts Dr. Shen's opinion as expert testimony under Federal Rules of

20  Evidence 702 as to the injuries Plaintiff presented upon admission to KMC, the clinical findings

21  of the chest x-ray, ultrasounds and CT scans, and the Defendants' rendering of medical care to the

22  extent relevant.

23

24

25

26

27

28

---

[7] Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify if the form of an opinion or otherwise if:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based upon sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the witness has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702.

1

**D. Material Facts**

2

**1.  Undisputed Material Facts**

3

Defendants attach a Reply to Plaintiff's statement of disputed and undisputed facts, listing

4

Defendants' facts, Plaintiff's facts, and Defendants' reply to Plaintiff.  (Doc. No. 33).  Each listed

5

fact cites to either a declaration (Doc. No. 26 at 4-10) or Plaintiff's medical records (Doc. No. 26

6

at 109-366).[8]  Defendants also refer the Court to the declaration of Sam Shen, M.D., in support of

7

their X-MSJ.  (*See generally* Doc. No. 24).

8

Having reviewed the record, the undersigned finds the following facts to be material and

9

undisputed, unless otherwise noted.

10
11
12
13
14

- On August 6, 2017, Plaintiff sustained multiple stab wounds from a prison
  altercation.  Prison officials transported Plaintiff to KMC that same day due to the
  stab wounds.  (Doc. No. 33 at 8) (citing Doc. No. 26 at 152).  Plaintiff arrived as a
  "critical trauma patient" from the stabbing; and denied "any chest pain or
  shortness of breath."  (*Id.*).

15
16
17
18
19
20
21
22
23
24
25
26

- Plaintiff disputes that he denied any chest pain or shortness of breath and states
  that upon arrival, "his sole complaint [WAS] his ribs on the left and right sides,
  and he was suffering from shortness of breath." (*Id.*) (emphasis in original).
  Plaintiff cites to no record supporting this fact.  And, contrary to Plaintiff's
  allegations, medical records at the time of the incident show the chief complaint
  was stab wounds.  (Doc. No. 26 at 151) (hospital care report noting "stab wounds
  bilat arms, chest, back); (*id.* at 144, discharge summary noting "[p]atient is a 51 yo
  M in correctional facility who presented as a critical trauma patient after he was
  assaulted and stabbed multiple times . . . . Patient's post-operatively course
  complicated by difficulties with pain and frequent complaints of chest pain, but
  repeated chest XR's and EKGs were negative for significant abnormalities.
  Patient tolerated oral intakes w/o difficulties.  LUE doppler and left chest US

27
28

---

[8] The undersigned refers to the page numbers indicated in the CM/ECF headers, rather than the Bates stamp numbers referred to by Defendants.

preformed were negative for significant abnormalities . . . .").

- At 1:18 p.m., staff from KMC evaluated Plaintiff for trauma using a portable x-ray.  (Doc. No. 33 at 9) (citing Doc. No. 26 at 155).  The x-ray revealed Plaintiff's bony structures and soft tissues were normal.  No other remarkable findings were noted.  (Doc. No. 26 at 155).

- At 1:28 p.m. staff from KMC performed a computed tomography ("CT") scan of Plaintiff's cervical spine.  (Doc. No. 33 at 10) (citing Doc. No. 26 at 155-156).  The CT revealed no fracture or malalignment.  (*Id.*).  Staff also performed a CT of Mr. Foster's head to evaluate for head trauma, which revealed no remarkable findings.  (*Id.*).  Staff performed abdominal ultrasounds, cardiac ultrasounds, and chest ultrasounds, each revealing no pericardial free fluid, no intraabdominal free fluid, and no pneumothorax.  (Doc. No. 33 at 10-11) (citing Doc. No. 26 at 156).

- At 4:20 p.m., due to a laceration in Plaintiff's lower anterior arm with associated intramuscular hematoma, a CT of Plaintiff's upper left extremity was performed.  (Doc. No. 26 at 7).  Dr. Rasmussen, who is not a named defendant, performed a procedure on Plaintiff's left arm. (Doc. No. 26 at 129) ("[e]vacuation of left arm hematoma and control of hematoma.").  Plaintiff refused a blood transfusion.  (*Id.* at 130).

- On August 7, 2017, around 12:51 p.m., Defendant Dr. Lee reported Plaintiff had no acute events since admission to the floor and was afebrile.  Overnight, Plaintiff complained of left arm and chest pain but was not in significant hemodynamic or respiratory distress or instability.  Plaintiff also complained of thoracic pain.  Defendant Dr. Lee's assessment was that Plaintiff was improving post-operatively with continued tingling and weakness of his hand but without overwhelming thickening or edema.  (Doc. No. 33 at 11) (citing Doc. No. 26 at 245).

- Due to Plaintiff's complaints of pain, Defendant Dr. Lee ordered another portable x-ray of Plaintiff's chest at 1:46 p.m.  (Doc. No. 33 at 12) (citing Doc. No. 26 at 296).  The impression read "[a] single AP view of chest was performed and

14

compared to a prior study from 8/6/2017. The lungs are clear.  No pleural effusion.

No pneumothorax.  Mildly enlarged heart." (Doc. No. 26 at 296).

- On August 8, 2017, around 4:08 p.m., Defendant Dr. Lee reported Plaintiff had no

  acute events overnight and was afebrile.  The records noted Plaintiff's complaints

  of a "pressure-like" chest pain.  (Doc. No. 33 at 12) (citing Doc. No. 26 at 243).

  Due to Plaintiff's chest swelling and his pain level, at 11:12 p.m., per Defendant

  Dr. Lee's order, Plaintiff underwent another chest ultrasound.  (Doc. No. 33 at 12)

  (citing Doc. No. 26 at 243, 295).  The impression read "[l]eft chest wall is normal

  in appearance.  No evidence of left chest wall hematoma or fluid collection.  If

  clinically indicated, consider further evaluation with CT of the chest." (*Id.*).

- On August 9, 2017 at 9:42 p.m., KMC discharged Plaintiff to Corcoran State

  Prison.  (Doc. No. 33 at 13) (citing Doc. No. 26 at 144-145); (*see also* Doc. No. 26

  at 134-143).  In the discharge summary, Defendant Dr. Lee listed Plaintiff's

  primary diagnosis as a left bicep extravasation/bleeding hematoma.  (*Id.* at 144).

  Plaintiff's secondary diagnosis was multiple shallow lacerations and acute blood

  loss anemia.  (*Id.*).  Defendant Dr. Lee noted Plaintiff was in stable condition

  without further need for any acute care.  (*Id.* at 144-145).  It was further

  recommended Plaintiff's sutures for the stab wound be removed in one week.  (*Id.*

  at 144).

- Defense expert, Dr. Shen, reviewed the medical records and concluded Defendants

  properly examined Plaintiff and met the appropriate standard of care.  (Doc. No.

  33 at 14-15) (citing Doc. No. 26 at 8 ¶ 9).  Dr. Shen found the "injuries in

  Plaintiff's Complaint do not match those shown in his medical records" from

  KMC.  (*Id.*, ¶ 10).  Dr. Shen opined all "appropriate investigations were made"

  including physical exam, chest x-ray, CT of cervical spine, CT of chest, CT of

  head, and CT of Plaintiff's upper extremities.  (*Id*, ¶ 11). Dr. Shen further opined

  that even if Plaintiff did have fractured ribs, which Dr. Shen states is refuted by the

  tests, his course of treatment "would have most likely consisted of supportive

1    care."  (Doc. No. 26 at 9 ¶ 15).

2        **2.  Facts in Plaintiff's Opposition**

3        Plaintiff's opposition includes his unsigned "declaration" (Doc. No. 44 at 26-30), which

4    consists of Plaintiff expressing his disagreements with Defendants' undisputed facts.  Plaintiff's

5    filing does not comply with Local Rule 260 as it does not cite to any evidence underpinning why

6    the facts are disputed.  The filing instead consists of conclusory statements, which are not a basis

7    for denying summary judgment.  *Arpin*, 261 F.3d at 922 (9th Cir. 2001).  Plaintiff's declaration

8    accordingly does not articulate a genuine factual dispute.

9        Plaintiff also submits a "statement of evidence in support of his statement of disputed and

10   undisputed facts" referencing an "Exhibit C" that purportedly contains a second medical opinion

11   from Pioneers Medical Center and related X-rays spanning four dates from 8/29/2017 to

12   9/12/2017 showing seven broken ribs.  (Doc. No. 44 at 16-17).  No such records were attached to

13   Plaintiff's opposition.  (*See generally id.*).  Instead, attached as Plaintiff's "Exhibit C" is an office

14   of grievance decision concerning staff misconduct.  (*Id.* at 49-52).  Plaintiff, however, maintains

15   he sustained 7 broken ribs.  (Doc. No. 33 at 13).  The Court's independent review of the record

16   reveals additional medical documents attached to the State court removal documents.  These

17   medical documents reflect an x-ray noting Plaintiff sustained one displaced rib *after* his release

18   from KMC, not at the time Plaintiff was treated at KMC.  (*See e.g.* Doc. No. 1 at 91, 198).

19   Specifically, two days after release from KMC, or on August 11, 2017, an x-ray from California

20   State Prison Corcoran revealed a "minimally displaced 10th rib fracture."  (Doc. No. 1 at 91,

21   198).

22       Approximately a month later on September 12, 2017, Plaintiff presented to Pioneer

23   Memorial Healthcare District "post appendectomy" complaining of abdominal pain.  (Doc. No. 1

24   at 135).   On October 9, 2017, Plaintiff had another x-ray at Calipatria State Prison, which this

25   time reflected "[h]ealing bilateral rib fractures" with fractures of "the anterior arch of the right

26   fourth through seventh ribs and fractures of the anterior arcs of the left fourth through sixth ribs."

27   (Doc. No. 1 at 131).  On December 4, 2017, Calipatria State Prison performed another x-ray on

28   Plaintiff noting "healed/healing right-sided rib fractures with no new fracture deformity

16

1    identified. Known left-sided rib fractures are not as conspicuous on the present exam, suggestive

2    of healed deformity." (*Id.* at 133).

3     As discussed above, Defendants dispute that Plaintiff suffered from broken ribs at the time he

4    was treated at KMC.

5          **D. The Undisputed Facts Show Neither KMC nor Dr. Lee Acted with Deliberate**

6          **Indifference to Plaintiff's Serious Medical Condition**

7          The undersigned first must consider whether Defendants, as the moving parties, have met

8    their initial burden of showing *prima facie* entitlement to summary judgment on the issue of

9    Plaintiff's medical deliberate indifference claim. *Celotex Corp.*, 477 U.S at 323. The *prima facie*

10   elements of medical deliberate indifference are (1) a "serious medical need[,] [where] failure to

11   treat a prisoner's condition could result in further significant injury or the unnecessary and

12   wanton infliction of pain" and (2) the defendant's "response to the need was deliberately

13   indifferent." *Wilhelm*, 680 F.3d at 1122 (internal quotation marks and citation omitted). The

14   second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's

15   pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096

16   (internal citations omitted).

17        **1. Serious Medical Need**

18        Here, the gravamen of the dispute involves Plaintiff's diagnosis, or from Plaintiff's

19   perspective, misdiagnosis, during his 3-day stay at KMC. The record is undisputed that Plaintiff

20   presented to KMC as a trauma patient with stab wounds following a prison riot. KMC provided

21   emergency care for Plaintiff's stab wounds and performed multiple ultrasounds, X-rays, and CT

22   scans during his stay in response to his continued reports of pain. Plaintiff faults Defendants for

23   "missing" his seven rib fractures. Yet, the medical records reflect all normal results from X-rays,

24   CT scans, and ultrasounds performed at KMC. None of the multiple scans Plaintiff received

25   revealed any rib fractures. Other than Plaintiff consistently reporting pain, including chest pain,

26   the Court's independent review of the record reveals no diagnosis of broken ribs while Plaintiff

27   was treated at KMC. And not one medical record from that time period reflects any broken ribs.

28        Plaintiff argues that Defendants' "own supporting evidence clearly disputes their

1  defense." (Doc. No. 33 at 13).  But the report Plaintiff references in support only documents his

2  complaints of pain and does not confirm Plaintiff sustained seven broken ribs in addition to the

3  stab wounds KMC treated.  Further, as discussed below, Dr. Lee continued to order additional

4  tests in response to Plaintiff's complaints of pain.  But the tests revealed normal findings and no

5  broken ribs.

6        Putting aside the precise medical condition at issue, the record is undisputed that Plaintiff

7  sustained stab wounds, was considered a trauma patient when he presented at KMC, and

8  experienced pain during his 3-day hospitalization.  These undisputed facts, when viewed in the

9  light most favorable to Plaintiff, indicate that he had a serious medical need.  A serious medical

10 need is evidenced by "the existence of an injury that a reasonable doctor or patient would find

11 important and worthy of comment or treatment; the presence of a medical condition that

12 significantly affects an individual's daily activities; or the existence of chronic and substantial

13 pain are examples of indications that a prisoner has a 'serious' need for medical treatment."

14 *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX*

15 *Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).  A reasonable jury therefore could

16 find that Plaintiff had a serious medical need resulting from his pain, stab wounds, and status as a

17 trauma patient.

18       **2. Deliberate Indifference**

19       However, the second prong of medical deliberate indifference—failure to respond to a

20 prisoner's pain, resulting in harm—is absent from the record.  *Jett*, 439 F.3d at 1096.  A

21 defendant "cannot be said to have been indifferent" to an inmate's pain if they took steps to

22 address it."  *DeGeorge v. Mindoro*, 2019 WL 2123590, at *7 (N.D. Cal. May 15, 2019).  Here,

23 Defendants indisputably took steps to address Plaintiff's complaints of pain.  Plaintiff received

24 around-the-clock medical care during his three-day hospitalization, including emergency

25 treatment for stab wounds to his left arm, sutures for his wounds, and continued care for these

26 wounds.  The record shows that Plaintiff had multiple X-rays, CT scans, and ultrasounds

27 performed to better diagnose and treat his condition.  Both Defendant Dr. Lee and other medical

28 doctors and nurses, who are not identified as Defendants in this case, provided Plaintiff with

various medications, including pain medication.  The record indicates that Plaintiff refused to take the narcotic pain medication, instead opting for other pain medication.

Assuming, arguendo, that Plaintiff had both stab wounds and broken ribs when he presented to KMC, it is undisputed that *no one* knew at that time that Plaintiff sustained broken ribs.  A person can only act with deliberate indifference when they know of and disregard an excessive risk to inmate health and safety.  *Toguchi v.* Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  In other words, a prison official "must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  *Id.* at 1057.  "'If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'"  *Id.* (citations omitted).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was."  *Farmer,* 511 U.S. at 839.  "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."  *Id.* (citations omitted).  Defendants' focus was on treating Plaintiff for multiple stab wounds.  The medical documents contain no facts that would have led Defendant Lee to believe Plaintiff could have suffered broken ribswhen the x-rays, CT scans, and ultrasounds gave no indication of broken ribs.

To the contrary, the first medical record reflecting any broken ribs was dated two days *after* Plaintiff was released from KMC.  On August 11, 2017, a "minimally displaced" 10th rib fracture was noted, not seven ribs as Plaintiff suggests.  About a month later, more fractured ribs were noted by x-ray, but four months thereafter, all broken ribs were noted as healed or healing.

It is undisputed that neither Dr. Lee nor anyone at KMC knew, or had reason to know, that Plaintiff sustained a broken rib.  No x-rays or other medical documents from KMC reflected Plaintiff sustained any broken ribs at that time.  Thus, the record contains no genuine dispute of material fact as to whether Defendant Lee acted with deliberate indifference to his serious medical condition.  There are no facts before the court showing that Defendant Lee knew Plaintiff had broken ribs and acted with deliberate indifference in failing to treat Plaintiff for that condition.  In fact, the medical records show only that Plaintiff presented a "minimally displaced

1   10th rib fracture" two days *after* release from KMC.

2       At most, accepting Plaintiff's version of the facts as true, Plaintiff presents a possible

3   medical negligence claim under the theory that Defendants should have diagnosed Plaintiff with a

4   rib fracture.  But medical negligence does not amount to cruel and unusual punishment under the

5   Eighth Amendment.  *See Broughton v. Cutter Labs*, 622 F.2d 458, 460 (9th Cir. 1980) (per

6   curiam) (medical malpractice or negligence does not support a cause of action under the Eighth

7   Amendment); *Garcia v. Katukota*, 362 F. App'x 622, 622 (9th Cir. 2010) (evidence of medical

8   misdiagnosis and difference of medical opinion are insufficient to show deliberate indifference).

9       The overwhelming record evidence shows that Defendant Lee provided extensive medical

10   care for Plaintiff's identified injuries and the resultant pain he experienced during his 3-day

11   hospitalization.  Taken together, the record refutes Plaintiff's claim of medical deliberate

12   indifference.  Defendants are accordingly entitled to summary judgment on this basis.

13       Construing the evidence in the light most favorable to Plaintiff, the undersigned finds

14   there is no triable issue as to whether Defendant Dr. Lee acted with deliberate indifference to

15   Plaintiff's serious medical condition.  The record demonstrates Plaintiff received medical care for

16   his stab wounds and attentive care in response to his complaints of pain.

17       **E.  *Monell* Claim**

18       On remand, the Fifth District Court of Appeal noted that Plaintiff may have a claim under

19   *Monell*, in addition to the individual § 1983 claims.  To establish municipal liability, a plaintiff

20   must prove that (1) he or she was deprived of a constitutional right; (2) the municipality had a

21   policy; (3) the policy amounted to deliberate indifference to a plaintiff's constitutional right; and

22   (4) the policy was the "moving force" behind the constitutional violation.  *Dougherty v. City of*

23   *Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  While *Monell* claims of municipal liability do not

24   arise from a respondeat superior theory, *Monell*, 436 U.S. at 691, such claims still require that

25   Plaintiff demonstrate a predicate violation of constitutional rights.  *Scott v. Henrich*, 39 F.3d 912,

26   916 (9th Cir. 1994) (holding that "municipal defendants cannot be held liable because no

27   constitutional violation occurred"); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799

28   (1986) (finding if no individual claim against police officer remains, then no liability on city and

1  the Police Commission).

2      Here, the undersigned recommends that Defendants' X-MSJ be granted because the

3  record does not contain any genuine issue of material fact concerning Plaintiff's Eighth

4  Amendment deliberate indifference to a serious medical condition claim as to Dr. Lee.  Thus,

5  because no "underlying constitutional violation" is present, Plaintiff's *Monell* claim fails as a

6  matter of law.

7      **F.  Plaintiff's MSJ**

8      Defendants oppose Plaintiff's MSJ, citing numerous procedural deficiencies.  The Court

9  agrees that Plaintiff's MSJ is deficient.   A party moving for summary judgment must include a

10  "Statement of Undisputed Facts" which "shall enumerate discretely each of the specific material

11  facts relied upon in support of the motion and cite the particular points of any pleading, affidavit,

12  deposition, interrogatory answer, admission, or other document relied upon to establish that fact."

13  Local Rule 260(a).  Because Plaintiff has not done so, his MSJ fails to comport with Rule 56(a)

14  and Local Rule 260(a).  And while *pro se* litigants are held to "less stringent standards than

15  formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam),

16  "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v*

17  *Attiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, *Lacey*

18  *v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc).

19      Moreover, the undisputed facts show Plaintiff received medical care for his injuries

20  sustained from the prison riot and altercation thereafter.  The primary dispute, as Plaintiff

21  acknowledges, involves Defendants' alleged misdiagnosis of his rib injury, e.g. whether he

22  sustained broken ribs or whether he sustained only soft-tissue injuries.  (Doc. No. 5 at 4-5).  Even

23  if the facts may support a claim of medical negligence, which the undersigned explicitly declines

24  to address, there is no triable issue as to whether Defendant Lee or KMC were deliberately

25  indifferent to Plaintiff's serious medical needs.  Because the undersigned finds no genuine dispute

26  of material fact as to Plaintiff's deliberate indifference claim, the undersigned recommends the

27  district court deny Plaintiff's MSJ as procedurally deficient and/or moot.

28      Accordingly, it is **ORDERED**:

21

1.  Defendants' requests for judicial notice (Doc. Nos. 16, 26 at 29-31) is GRANTED to the extent set forth above.

2.  Plaintiff's request for judicial notice (Doc. No. 44) is DENIED as set forth above.

It is further **RECOMMENDED**:

1.  The district court GRANT Defendant KMC and Dr. Lee's cross motion for summary judgment (Doc. No. 23).

2.  The district court DENY Plaintiff's motion for summary judgment (Doc. No. 5) as procedurally deficient and otherwise as moot.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


Dated:   __May 4, 2023__

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE